● **ORIGINAL**

*N/c a elacion to peltroory* (handwritten)

# IN THE UNITED STATES DISTRICT COURT
## OF THE MIDDLE DISTRICT OF PENNSYLVANIA

**STEVEN D. CRAWFORD,**

              **Plaintiff** :

                      :

   **v.** :

                      :

**COMMONWEALTH OF** :
**PENNSYLVANIA, COUNTY OF** :
**DAUPHIN, CITY OF HARRISBURG,** :
**JANICE ROADCAP, JOHN C.** :
**BALSHY, and ESTATE OF** :
**WALTON D. SIMPSON,** :

            **Defendants** :

**1 : CV 03-0693**

**No.**

**FILED**
HARRISBURG, PA

APR 24 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## REMOVAL PETITION

Defendants, Commonwealth of Pennsylvania, County of Dauphin, City of Harrisburg, Janice Roadcap, John C. Balshy, and Estate of Walton D. Simpson, by their respective counsel, hereby remove the above-captioned matter from the Court of Common Pleas of Dauphin County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania.   The Defendants state that the following grounds support removal:

1.    On March 28, 2003, Plaintiff filed a Complaint in the Court of Common Pleas of Dauphin County at docket number 2003-CV-1452. A copy of the Complaint is attached as "Exhibit A."

2.    A courtesy copy of the Complaint was received by the Commonwealth of Pennsylvania on March 31, 2003.

3.    Plaintiff sets forth civil rights claims under 42 U.S.C. §§1983, 1985 and 1986 against defendants alleging violations of his Fourth and Fourteenth Amendment rights, as well as state law claims alleging fraud, false imprisonment, civil conspiracy and the intentional infliction of emotional distress.

4.    This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. §§1331 and 1343, supplemental jurisdiction over state law claims arising from the same facts pursuant to 28 U.S.C. §1367, and the action is removable to this Court pursuant to 28 U.S.C. §1441(a) & (b).

5.    Notice of Removal has been served this day upon plaintiff's counsel and to the Prothonotary of the Court of Common Pleas of Dauphin County. A copy of that Notice is attached as "Exhibit B."

6.    Defendants expressly do not waive any defenses and claims of immunity (Eleventh Amendment or sovereign), privilege or other defense in filing this petition for removal.

**WHEREFORE**, Defendants remove the aforementioned action pending in the

Court of Common Pleas of Dauphin County at docket No. 2003-CV-1452 to this

Court.

**Respectfully submitted,**

D. MICHAEL FISHER
Attorney General

By: _____
Maryanne M. Lewis
Deputy Attorney General

By: _____
Gregory R. Neuhauser
Senior Deputy Attorney General

Office of Attorney General
15th Floor, Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 705-7327
Counsel for Defendants, Commonwealth of
Pennsylvania, Janice Roadcap and
John C. Balshy

By: _____
Frank J. Lavery, Jr.
Robert G. Hanna, Jr.
Lavery, Faherty, Young & Patterson, P.C.
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
Counsel for Defendant, County of Dauphin
and Estate of Walton D. Simpson

By: *Andrew W. Norfleet /gm*

Andrew W. Norfleet
Metzger, Wickersham, Knauss & Erb, P.C.
3211 North Front Street
P.O. Box 5300
Harrisburg, PA  17110-0300
Counsel for Defendant, City of
Harrisburg

Dated:  April 24, 2003

A

| | | |
|---|---|---|
| STEVEN D. CRAWFORD,<br>3113 Union Deposit Road<br>Harrisburg, PA 17109, | : | IN THE COURT OF COMMON PLEAS<br>DAUPHIN COUNTY, PENNSYLVANIA |
| | : | NO. 2003 CV 1452 CV |
| Plaintiff, | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| COMMONWEALTH OF,<br>PENNSYLVANIA,<br>Office of Attorney General<br>Strawberry Square, 16th Floor<br>Harrisburg, PA 17120,<br>and<br>COUNTY OF DAUPHIN<br>2 South 2nd Street<br>Harrisburg, PA 17101<br>and<br>CITY OF HARRISBURG<br>10 North 2nd Street<br>Harrisburg, PA 17101<br>and<br>JANICE ROADCAP<br>3817-B Peters Mountain Road<br>Halifax, PA 17032<br>and<br>JOHN C. BALSHY<br>20 South Lingle Avenue<br>Palmyra, PA 17078<br>and<br>ESTATE OF WALTON D. SIMPSON | : | |
| Defendants | : | |

## COMPLAINT

Plaintiff, Steven D. Crawford (hereinafter "Plaintiff" or "Mr. Crawford"), by and through his

counsel, Goldberg, Katzman & Shipman, P.C., and The Cochran Law Firm, respectfully complains

of the above-captioned Defendants as follows:

## I.   PARTIES

1.     Plaintiff, Steven D. Crawford, is an adult individual who resides at 3113 Union Deposit Road, Harrisburg, Pennsylvania 17109.

2.     Defendant, the Commonwealth of Pennsylvania, maintains a business address of: Office of Attorney General, Strawberry Square, 16th Floor, Harrisburg, Pennsylvania 17120.

3.     Defendant, the County of Dauphin, maintains a business address of 2 South 2nd Street, Harrisburg, Pennsylvania 17101.

4.     Defendant, the City of Harrisburg, maintains a business address of 10 North 2nd Street, Harrisburg, Pennsylvania 17101.

5.     Defendant, Janice Roadcap ("Chemist Roadcap"), is an adult individual with a residence address of 3817-B Peters Mountain Road, Halifax, Pennsylvania 17032.  At all times relevant to this Complaint, Chemist Roadcap was a chemist for the Pennsylvania State Police and, thus, acted as an agent of the Commonwealth of Pennsylvania.

6.     Defendant, John Balshy ("Corporal Balshy"), is an adult individual with a residence address of 20 South Lingle Avenue, Palmyra, Pennsylvania 17078.  At all times relevant to this Complaint, Defendant John Balshy ("Corporal Balshy") was a Corporal with the Pennsylvania State Police and, thus, acted as an agent of the Commonwealth of Pennsylvania.

7.     Defendant, Estate of Walton D. Simpson, is the legal entity named on behalf of Defendant Walton D. Simpson ("Sargeant Simpson").  Concurrently with the filing of this Complaint, Plaintiff's counsel is in the process of petitioning the Court of Common Pleas of Cumberland County, which upon information and belief is the county of residence of the sole

2

surviving heir of Defendant Simpson, to open Defendant Simpson's Estate. At all times relevant to this Complaint, Sargeant Simpson was either a Sargeant for the City of Harrisburg Police or a Detective for the County of Dauphin, Pennsylvania and, thus, acted as an agent of both the City of Harrisburg and the County of Dauphin.

        8.    Venue is proper in this County because the operative conduct alleged herein occurred in Dauphin County and Defendants reside and/or conducted business here.

## II.   BACKGROUND

        9.    On September 13, 1970, a Harrisburg police officer discovered the corpse of John Eddie Mitchell, a 13-year old boy who had been reported missing the previous day, lying in a pool of blood in a detached garage owned by the family of Mr. Crawford. John Mitchell died of injuries sustained when he was beaten on his head with a blunt instrument.

        10.    The Plaintiff was 14 years old at the time John Eddie Mitchell was murdered.

        11.    Parked inside the garage where the body was found were a 1952 Chevrolet and a 1957 Pontiac Station Wagon, both registered to Mr. Crawford's father.

        12.    As the detached garage and the vehicles therein were owned by and on the property of the Crawford family, Mr. Crawford frequently had occasion to be inside of the garage and to have come in contact with the vehicles.

        13.    The left rear door on the Pontiac automobile found inside the garage had been splattered and smeared with blood.

        14.    Police investigators processed the portion of the Pontiac automobile containing the blood and recovered seven latent finger and palm prints.

3

15. Of these seven latent prints, three partial palm prints were subsequently matched with known impressions obtained from Mr. Crawford.

16. Of these three partial palm prints, one ("Palm Print 1") contained brownish-red particles later identified by Chemist Roadcap as human blood. Another of the palm prints contained similar particles which, when subjected to a screening test, disclosed the presence of blood. The final print contained no such foreign material.

17. According to testimony presented at the hereinafter-described trial by Sargeant Simpson, Corporal John Balshy and Chemist Roadcap, the blood on Palm Print 1 was limited to the ridge area of the print; it was not dispersed across the print and was not present in the valleys of the print.

18. On February 14, 1974, three and a half years after the crime, Mr. Crawford, then 17 years old, was arrested and charged with the murder of John Eddie Mitchell.

19. Mr. Crawford was initially tried and found guilty of murder on September 18, 1974.

20. On October 8, 1976, the Supreme Court of Pennsylvania ordered a new trial for Mr. Crawford because it found that county Detective Walton D. Simpson testified outside the realm of his expertise when he opined that Mr. Crawford's hand print was placed on the car at the time of the murder.

21. Mr. Crawford was tried and found guilty of murder a second time on February 24, 1977.

22. Mr. Crawford's conviction was overturned and a mistrial was ordered by the

4

trial judge due to prejudicial errors committed through the testimony of the Commonwealth's witnesses.

      23.    Mr. Crawford's third trial on the aforesaid charge commenced on February 13, 1978.

      24.    Mr. Crawford's case, <u>Commonwealth of Pennsylvania v. Steven D. Crawford</u>, No. 401 C.D. 1974, was heard by a jury in a trial presided over by the Honorable John C. Dowling of the Dauphin County Court of Common Pleas. At the completion of the trial, Mr. Crawford was found guilty of first degree murder on February 17, 1978.

      25.    Thereafter, on May 14, 1982, four years later, Mr. Crawford was sentenced by Judge Dowling to life imprisonment.[1]

      26.    Following the imposition of the aforesaid sentence, Mr. Crawford filed an appeal to the Pennsylvania Superior Court. This appeal was denied on November 10, 1983 in <u>Commonwealth v. Crawford</u>, 321 Pa. Super. 572, 468 A.2d 829 (1983).[2]

      27.    A Petition for Allowance of Appeal from the November 10, 1983 decision of the Superior Court was filed with and denied by the Supreme Court of Pennsylvania on March 26, 1984.[3]

---

[1] Mr. Crawford was represented by William C. Costopoulos, Esquire, at all legal proceedings between arrest and sentencing.

[2] In that appeal Mr. Crawford was represented by Henry W. Mitchell, Esquire.

[3] It is believed that Mr. Crawford was represented in this proceeding by Henry W. Mitchell, Esquire.

28.     A subsequent pro se Petition for Allowance of Appeal Nunc Pro Tunc was denied by the Supreme Court on February 27, 1985.

29.     A Petition for Writ of Habeas Corpus filed in the United States District Court for the Middle District of Pennsylvania, captioned Steven Douglas Crawford, Petitioner, Pro Se v. Robert M. Freeman and LeRoy S. Zimmerman, Attorney General of Pennsylvania, Respondents, was denied on March 31, 1987.

30.     On November 7, 1988 Petitioner filed a pro se Petition under the Post Conviction Relief Act (PCRA).[4]

31.     Following the appointment of the Office of the Public Defender as counsel for Mr. Crawford, a supplemental PCRA Petition was filed. This Petition was denied by Judge Dowling on August 3, 1989.

32.     The denial of Mr. Crawford's August 3, 1989 Petition was affirmed by the Superior Court on May 9, 1990, in a proceeding docketed at No. 525 HBG 1989.

33.     On October 9, 1993, Mr. Crawford filed a second pro se PCRA Petition. Francis M. Socha, Esquire was appointed by the Court to represent Mr. Crawford in this proceeding and, on March 7, 1997, filed a second supplemental PCRA Petition. This Petition was denied by the Honorable Joseph H. Kleinfelter on March 16, 1998.

34.     On September 29, 2000 Mr. Crawford filed a Petition for Writ of Habeas

---

[4]It is believed and, therefore, averred that all of the hereinafter described proceedings under the Post Conviction Relief Act were filed to the same caption and docket number as the original Information charging Mr. Crawford with the murder of John Mitchell.

Corpus in the United States District Court for the Middle District of Pennsylvania. The Petition was amended on November 29, 2000.

35.    All litigation, save the federal habeas corpus proceeding, has been completed.

36.    During Mr. Crawford's aforesaid February 1978 trial, three Commonwealth law enforcement officials - - Sargeant Simpson, Corporal Balshy and Chemist Roadcap - - testified that the blood on Palm Print 1 was limited to the ridge area of the print. This was critical to the Prosecution's case against Mr. Crawford because the testimony that the blood on Palm Print 1 was limited to the ridge area of the print and not diffused across the print was used to argue that Mr. Crawford's prints were not on the Pontiac prior to the murder and sprayed with blood from the injuries inflicted upon John Mitchell as suggested by the defense, but, rather, was placed there by Mr. Crawford within a short time after his hand came into contact with human blood.

37.    Further, this testimony enabled Commonwealth expert witness Herbert L. MacDonell to testify that the hand identified in Palm Print 1 had on it partially dried blood at the time it came in contact with the car.

38.    Corporal Balshy also testified that the blood on the hand which created Palm Print 1 had blood on it when it was made.

39.    However, as was later discovered after having been fraudulently concealed for many years, the factual basis underlying the aforementioned testimony was completely discredited and proven to be a complete fabrication.

40.    The complete falsity of the aforesaid testimony was known to law enforcement officers, Sargeant Simpson, Corporal Balshy and Chemist Roadcap, since, on November 29, 1972,

more than two years after the murder, Chemist Roadcap was asked to microscopically examine Palm Print 1 to determine if the foreign material located thereon was human blood. To do so, she placed a reagent on the print to determine if it would produce a reaction indicating the presence of blood. Present when Chemist Roadcap did the testing and also viewing the print with her were Sargeant Simpson and Corporal Balshy.

41.    Lab notes detailing, <u>inter alia</u>, the observations made during the testing process were prepared by Chemist Roadcap. In these notes, Chemist Roadcap wrote: "This [reagent] reaction [indicating the presence of human blood] was greater along the ridges of the fingerprint, however, numerous particles in the valleys also gave [a positive] reaction." A true and correct copy of Chemist Roadcap's lab notes is attached hereto as Exhibit "A".

42.    Both Chemist Roadcap and Corporal Balshy signed these lab notes.

43.    Sargeant Simpson was present for and observed this testing.

44.    At some point after the initial testing, the Defendants altered the original lab notes by obliterating the reference to blood being found in the valleys, which would be consistent with blood being splattered over a pre-existing print. <u>See</u> the Obliterated Records attached hereto as Exhibit B.

45.    This obliteration was intentionally carried out to materially alter the record and conceal information which was exculpatory to Mr. Crawford.

46.    On November 30, 1972, the day following the examination of the print and the preparation of the aforesaid lab notes, Chemist Roadcap prepared a report which states: "This indicates the presence of blood deposited by the donor of the palmprint." A true and correct copy

of Chemist Roadcap's lab report is attached hereto as Exhibit "C". In this statement, Chemist Roadcap is clearly saying that blood was on Mr. Crawford's hand before he touched his father's Pontiac.

47. The testimony presented by Commonwealth witnesses Roadcap, Balshy and Simpson was patently false and known by them to be false.

48. In response to a defense discovery request, the Commonwealth eventually produced the altered November 30, 1972 lab report, but failed to produce the original November 29, 1972 lab notes.

49. By order dated March 13, 2001, the Office of the Federal Public Defender was appointed to represent Mr. Crawford in the aforementioned federal habeas corpus action.

50. Following this appointment, the Office of the Federal Public Defender and the Office of the District Attorney of Dauphin County engaged in a process of voluntary discovery.

51. On October 17, 2001, pursuant to an appointment which had been made within the previous week, Federal Public Defender Investigator Richard S. Garvey appeared at the District Attorney's Office for the purpose of reviewing a group of Crawford-related documents which had come into the possession of the Office of the District Attorney.

52. These documents had been in the possession of Sargeant Simpson and had been discarded by his family following his death.

53. The discarded documents were discovered when a police officer from a neighboring jurisdiction came upon several youths playing with the briefcase the Simpson family had discarded.

9

54.     Upon reviewing these documents, Mr. Garvey discovered a copy of Chemist Roadcap's original November 29, 1972 lab notes, the date on which she first viewed Palm Print 1 under a microscope in the presence of Defendants Balshy and Simpson.

55.     Paragraph 7 of Exhibit "A" reads as follows: "This reaction was greater along the ridges of the fingerprint, however numerous particles in the valleys also gave [positive] reactions."

56.     Paragraph 7 of the lab notes, reflecting that there were numerous particles in the valleys of Palm Print 1, is consistent with the theory advanced by Mr. Crawford's trial counsel that the print was already on Mr. Crawford's father's car when it was splattered with blood during the murder, and it contradicts the testimony of Commonwealth witnesses Roadcap, Simpson, Balshy and MacDonell.

57.     The suppression and concealment of the lab notes evidence enabled the Commonwealth to present false and damning testimony from Sargeant Simpson, Corporal Balshy Chemist Roadcap.

58.     Furthermore, the disparity between Chemist Roadcap's exculpatory lab notes and her incriminatory report not only suggests that her testimony was false, but also that she, Corporal Balshy, who co-signed her notes, and Sargeant Simpson, who, with Roadcap and Balshy, viewed the latent print on November 29, 1972, engaged in a conspiracy to suppress this exculpatory evidence and hide it from the defense.

59.     At the time of Mr. Crawford's trial, the Commonwealth was under an obligation imposed upon it by the 14th Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution to disclose to the defense evidence favorable to the

10

accused. <u>See, e.g., Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); <u>United States v. Agurs</u>, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); <u>Commonwealth v. Hallowell</u>, 477 Pa. 232, 383 A.2d 909 (1978).

60.    Chemist Roadcap's original and true lab notes contain information which is favorable to the defense in that they support a theory of the defense pursued by Mr. Crawford at trial, <u>i.e.</u>, that Mr. Crawford's prints were on the car before the murder, were splattered with blood at the time of the murder and, thus, the blood was dispersed across both the ridges and the valleys of the print.

61.    The disclosure of these lab notes would have effectively precluded presentation of any incriminating forensic evidence linking Mr. Crawford to the commission of the crime.

62.    The failure to disclose the lab notes to the defense was not known to Mr. Crawford or any of his previous attorneys and could not have been ascertained by them by the exercise of due diligence; the material was purposefully suppressed by the Commonwealth and hidden from the defense.

63.    The failure of the Commonwealth to conform to its obligations under the Constitution of the United States and the Constitution and laws of Pennsylvania, 42 Pa.C.S.A. §9545(b)(1)(ii), by disclosing Chemist Roadcap's lab notes undermined the truth-determining process and jeopardized the integrity of the judicial system.

64.    The Roadcap lab notes, which became available to the defense for the first time on October 17, 2001, exculpate Mr. Crawford from his alleged involvement with the murder of Mr. Mitchell.

11

65.     The extent to which the suppressed evidence undermined the truth determining

process is apparent from a review of the Supreme Court opinion reversing Mr. Crawford's first

conviction in which the Court said:

> The prosecution's expert witness testified that this blood was on the
> hand when it left the print on the car. This witness also testified that,
> in his opinion, the three partial palmprints identified as belonging to
> appellant were placed on the car at the time of the killing. No other
> evidence was produced to establish that appellant was inside the
> garage at the time of the killing. supra at 364 A.2d 660, 662
> (emphasis added).

66.     Despite the obvious importance of the issue, the individual Defendants on two

additional occasions provided false testimony as part of a conspiracy to wrongfully convict Mr.

Crawford.

67.     The Commonwealth, County and City lacked sufficient safeguards to prevent

their agents from concealing exculpatory evidence and from testifying falsely.

68.     The Commonwealth, County and City failed to adequately train their

employees so as to prevent them from altering evidence, concealing evidence and/or testifying falsely.

69.     The Commonwealth, County and City, through their lack of sufficient

supervision, fostered an environment that encouraged their agents to conceal evidence, alter evidence

and testify falsely.

70.     The actions taken by the individual Defendants in this case are part of a pattern

of improper conduct encouraged and condoned by the Commonwealth, County and City.

71.     On or about December 10, 2001, undersigned counsel filed on behalf of Mr.

Crawford a Petition for Post-Conviction Relief pursuant to the Post-Conviction Relief Act, 42 Pa.

C.S.A. § 9541 et seq., seeking Mr. Crawford's unconditional release from imprisonment or, in the alternative, a new trial.

72. The court scheduled a hearing on March 7, 2002 to address the issues set forth in the Petition for Post-Conviction Relief and the response thereto filed by the Commonwealth. At said hearing, the Commonwealth offered to release Mr. Crawford from imprisonment, and it agreed to honor said offer up until the date on which Chemist Roadcap was to be deposed by Mr. Crawford's counsel.

73. At the March 7, 2002 hearing, the court scheduled an evidentiary hearing to take place on June 24, 2002.

74. Chemist Roadcap was deposed by Joshua D. Lock, Esquire, counsel for Mr. Crawford, on June 13, 2002.

75. Following Chemist Roadcap's deposition, on June 24, 2002, the Dauphin County District Attorney's Office conceded that Mr. Crawford was entitled to a new trial under the Post-Conviction Relief Act and that he should be released on nominal bail.

76. The District Attorney's Office's actions were mandated by the intentional suppression of exculpatory evidence and obvious falsification of testimony.

77. On July 16, 2002, the District Attorney's Office filed an Application for Permission to Enter a Nolle Prosequi.

78. This action was prompted by a recognition that without the falsified testimony, conviction would be impossible.

79. By order of the Dauphin County Court of Common Pleas, the District

Attorney's Application was granted on July 16, 2002 and Mr. Crawford was immediately released from imprisonment.

80.    Mr. Crawford spent 28 years incarcerated in various correctional facilities for a crime he did not commit.

81.    Mr. Crawford is innocent of the murder of John Eddie Mitchell; further, the proceedings in which he was adjudged guilty were disgustingly unfair and resulted in a gross and intolerable miscarriage of justice.

82.    Mr. Crawford's conviction resulted from an egregious violation of rights afforded him by the United States Constitution and the Pennsylvania Constitution.

## COUNT I

### 42 U.S.C. § 1983

83.    The averments set forth in Paragraphs 1 through 82 are incorporated herein as if set forth in their entirety.

84.    As alleged herein, Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, adulterated and concealed Chemist Roadcap's original November 29, 1972 lab notes concerning the testing and analysis of Palm Print 1, which results exculpated Mr. Crawford from the murder charge he faced.

85.    Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Chemist Roadcap's original lab notes to be doctored to indicate

14

that there was blood on Mr. Crawford's hand at the time his hand print was placed on the car; this fabricated and false evidence substantially prejudiced Mr. Crawford and served as the lynch pin to his murder conviction.

86.     Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, offered knowingly false testimony at the three trials of Plaintiff based upon the improperly altered evidence - all with the specific intent of wrongfully convicting Mr. Crawford.

87.     This aforementioned fraudulent and deceitful conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, is part of a persistent and troubling pattern of manipulating and falsifying evidence that exists and is condoned within the law enforcement units of the Commonwealth, the City of Harrisburg and Dauphin County.

88.     Further, the Commonwealth failed to satisfy the obligation imposed upon it by the 14th Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution to disclose to the defense evidence favorable to the accused. See, e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Commonwealth v. Hallowell, 477 Pa. 232, 383 A.2d 909 (1978).

89.     The aforementioned fraudulent and deceitful conduct perpetrated by Sargeant

15

Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to unnecessarily and wrongfully spend 28 years of his life, beginning when he was only 17, confined in prison for a crime he did not commit.

90.     The aforementioned fraudulent and deceitful conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to suffer extreme emotional distress, embarrassment, humiliation and fear, and it deprived him of any meaningful opportunity to obtain an education, secure gainful employment, raise a family and become a productive member of society.

91.     This aforementioned conduct of the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, here committed by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, caused Mr. Crawford to be deprived of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 1 and 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and such other relief as the Court deems just and proper.

16

## COUNT II

### 42 U.S.C. §§ 1985 and 1986

92.    The averments set forth in Paragraphs 1 through 91 are incorporated herein as if set forth in their entirety.

93.    As alleged herein, Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, maliciously conspired for the purpose of depriving, either directly or indirectly, Mr. Crawford, an African-American, of equal protection under the law, and of equal privileges and immunities under the law in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 1 and 26 of the Pennsylvania Constitution.

94.    As alleged herein, Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law, conspired to adulterate and conceal Chemist Roadcap's original November 29, 1972 lab notes, which exculpated Mr. Crawford, because he was African-American.

95.    As alleged herein, Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law, conspired to cause Chemist Roadcap's original lab notes to be doctored to indicate that there was blood on Mr. Crawford's hand at the time his hand print was placed on the car; Sargeant Simpson, Corporal Balshy and Chemist Roadcap fabricated and falsified said evidence and testified based upon the falsified evidence, all of which served as the lynch pin to his murder conviction, because he was African-American.

96.    This aforementioned deceitful, conspiratorial and racially-motivated conduct

17

perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, is part of a persistent and troubling pattern that exists and is condoned within the law enforcement units of the Commonwealth, the City of Harrisburg and Dauphin County.

97.     Further, the Commonwealth failed to satisfy the obligation imposed upon it by the 14th Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution to disclose to the defense evidence favorable to the accused. See, e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Commonwealth v. Hallowell, 477 Pa. 232, 383 A.2d 909 (1978).

98.     The aforementioned fraudulent and deceitful conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to unnecessarily and wrongfully spend 28 years of his life, beginning when he was only 17, confined in prison for a crime he did not commit.

99.     The aforementioned deceitful, conspiratorial and racially-motivated conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to suffer extreme emotional distress, embarrassment, humiliation and fear, and it deprived him of any meaningful opportunity to obtain an education, secure gainful employment, raise a family and become a productive member of society.

18

100.   This aforementioned conduct of the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, here committed by Sargeant Simpson, Corporal Balshy and Chemist Roadcap against Mr. Crawford because he is an African-American, caused Mr. Crawford to be deprived of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 1 and 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT III

### FRAUD

101.   The averments set forth in Paragraphs 1 through 100 are incorporated herein as if set forth in their entirety.

102.   As set forth hereinabove, the Defendants committed fraud by concealing the exculpatory results of the tests on Palm Print 1, which were contained in Chemist Roadcap's November 29, 1972 lab notes.

103.   Defendants Simpson and Roadcap committed a further act of fraud by testifying at trial, contrary to Mrs. Roadcap's November 29, 1972 lab notes, that the blood on Palm Print 1 was limited to the ridge area of the print and not dispersed across the print and present in the valleys of the print.

19

104.    The above fraudulent representations were made knowingly and falsely; at a minimum, said fraudulent representations were made with a reckless disregard as to whether they were true or false.

105.    All of the aforementioned fraudulent representations were made with the intent of misleading the court and the jury into relying upon said fraudulent information.

106.    The court and the jury justifiably relied upon the aforementioned fraudulent representations.

107.    As a direct and proximate result of the fraudulent misrepresentations set forth above, Mr. Crawford was convicted of murdering John Eddie Mitchell and spent 28 years of his life imprisoned for not only a crime he did not commit, but a crime the Defendants knew he did not commit.

108.    The deplorable conduct described above constitutes a fraud upon the court, the members of the jury who sat for the trial, and Mr. Crawford.

109.    The aforementioned deceitful, conspiratorial and racially-motivated conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to suffer extreme emotional distress, embarrassment, humiliation and fear, and it deprived him of any meaningful opportunity to obtain an education, secure gainful employment, raise a family and become a productive member of society.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along

20

with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT IV

## FALSE IMPRISONMENT

110.   The averments set forth in Paragraphs 1 through 109 are incorporated herein as if set forth in their entirety.

111.   Despite having knowledge as of November 29, 1972 that Mr. Crawford's prints were on the car before the murder and became splattered with blood at the time of the murder, on November 30, 1972, the day following the examination of the print and the preparation of the aforesaid lab notes, Chemist Roadcap, with full knowledge possessed by Sargeant Simpson and Corporal Balshy, prepared a report which states: "This indicates the presence of blood deposited by the donor of the palmprint."

112.   Chemist Roadcap, Sargeant Simpson and Corporal Balshy testified pursuant to this false information at Mr. Crawford's trial.

113.   Defendants intended through these aforementioned deceitful actions to cause the wrongful confinement and imprisonment of Mr. Crawford.

114.   As a direct and proximate result of Defendants' actions, Mr. Crawford was wrongfully convicted of murder and spent 28 years of his life imprisoned for a crime he did not commit.

115.   The aforementioned deceitful, conspiratorial and racially-motivated conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of

state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to suffer extreme emotional distress, embarrassment, humiliation and fear, and it deprived him of any meaningful opportunity to obtain an education, secure gainful employment, raise a family and become a productive member of society.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT V**

**CONSPIRACY**

116.    The averments set forth in Paragraphs 1 through 115 are incorporated herein as if set forth in their entirety.

117.    As set forth hereinabove, Chemist Roadcap, Sargeant Simpson and Corporal Balshy engaged in a conspiracy to suppress the exculpatory palm print evidence and conceal it from the Mr. Crawford and his counsel.

118.    Defendants' unlawful conspiracy against Mr. Crawford was successful in that it caused Mr. Crawford to be wrongfully imprisoned for 28 years of his life.

119.    The aforementioned deceitful, conspiratorial and racially-motivated conduct perpetrated by Sargeant Simpson, Corporal Balshy and Chemist Roadcap, acting under the color of state law in their positions with the Commonwealth of Pennsylvania, the City of Harrisburg and the County of Dauphin, caused Mr. Crawford to suffer extreme emotional distress, embarrassment,

22

humiliation and fear, and it deprived him of any meaningful opportunity to obtain an education, secure

gainful employment, raise a family and become a productive member of society.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and

against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along

with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and

such other relief as the Court deems just and proper.

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120.    The averments set forth in Paragraphs 1 through 119 are incorporated herein

as if set forth in their entirety.

121.    Defendants' conduct, as described herein, constitutes the intentional infliction

of severe emotional distress upon Mr. Crawford, which did in fact cause Mr. Crawford severe

emotional distress.

122.    Defendants intended to inflict severe emotional distress upon Mr. Crawford,

or acted with wanton and reckless disregard for the likelihood that such severe emotional distress

would be inflicted upon him.

123.    As a result of Defendants' misconduct, as described herein, Mr. Crawford

suffered extreme emotional distress, embarrassment, humiliation and fear, and it deprived him of any

meaningful opportunity to obtain an education, secure gainful employment, raise a family and become

a productive member of society.

124.    Defendants' conduct is without privilege or justification.

WHEREFORE, Plaintiff, Steven D. Crawford, respectfully demands judgment in his favor and against Defendants in an amount in excess of $35,000, which exceeds the limits of arbitration, along with interest, costs of suit, exemplary damages to the extent permitted by law, attorneys' fees, and such other relief as the Court deems just and proper.

Respectfully Submitted,

GOLDBERG, KATZMAN & SHIPMAN, P.C.

By: _____
Joshua D. Lock, Esquire
Attorney I.D. # 17092
Jerry J. Russo, Esquire
Attorney I.D. # 55717
Thomas J. Weber, Esquire
Attorney I.D. # 58853
David M. Steckel, Esquire
Attorney I.D. # 82340
320 Market Street, P.O. Box 1268
Harrisburg, PA 17108-1268
(717) 234-4161

The Cochran Law Firm
Johnnie L. Cochran, Jr., Esquire

Date: _____          Attorneys for Plaintiff, Steven D. Crawford

87022.1

Exhibit A

Dauphin

Warden          Harrisburg, Dauphin          20-210

John McDonell          None          None

Blood Analysis of a Latent Fingerprint          Cpl. John C. Balshy
Life.          R-I Division
          Dept. Headquarters
          PCP Harrisburg

| QUANTITY | ITEM NO. | DESCRIPTION |
|---|---|---|
| 1. | | One Latent lift  (palm print) |

1. three strips were cut from photo. paper.

2. tape was peeled off of the strips leaving
   tape — print — and a white layer of emulsion
   (bromide)

3. the bromide layer was then scraped, exposing
   the fingerprint powder.

4. the sample was wet with $H_2O$ and excess
   water was allowed to dry off.

5. Benzidine reagent was the applied
   along with 2% hydrogen peroxide.

6. a ⊕ reaction was obtained from the reaction
   of reagents and the fingerprint powder.

7. This reaction was greater along the
   ridges of the fingerprint, however
   numerous particles in the valleys also
   gave ⊕ reactions.

REMARKS

A positive reaction was obtained with
Benzidine reagent. This indicates
the presence of blood on the
fingerprint impression. deposited by
the donor of the fingerprint impression

| LABORATORY RESULTS ARE NEGATIVE. THE LISTED EVIDENCE MAY BE DESTROYED   ☐ YES   ☐ NO | 13 SIGNATURE OF REQUESTER  Cpl. John C. Balshy | 14 DATE  11/22/72 |

Exhibit B

Case 1:03-cv-00083-ARC   Document 1   Filed 04/24/2003   Page 32 of 39

PENNSYLVANIA STATE POLICE
LABORATORY DIVISION
1701 S. HERR STS  HARRISBURG  PA 17103 TEL: 717-234-4051

### REQUEST FOR LABORATORY ANALYSIS

| | |
|---|---|
| DATE RECEIVED: November 23, 1972 | |
| SECTION Chemistry | |

| 1. OFFENSE | 2. LOCATION (CITY-BOROUGH-TOWNSHIP-COUNTY) | 3. INCIDENT NO. | 4. DATE OCCURRED |
|---|---|---|---|
| Murder | Harrisburg, Dauphin | 29-240 | 9/13/72 |

| 5. VICTIM | 6. ACCUSED | 7. SUSPECT |
|---|---|---|
| John Mitchell | None | None |

**8. TYPE OF EXAMINATION REQUESTED**

Blood Analysis of a Latent Fingerprint Lift.

**9. SUBMIT REPORT TO (NAME AND ADDRESS OF AGENCY)**

Cpl. John C. Balshy
R-I Division
Dept. Headquarters
PSP Harrisburg

| 10. QUANTITY | ITEM NO. | DESCRIPTION |
|---|---|---|
| | 1. | One Latent lift  (palm print) |

1. three strips were cut from photo. paper.
2. tape was peeled off of the strips leaving tape — print — and a white layer of emulsion (bromides)
3. the bromide layer was then scraped, exposing the fingerprint powder.
4. the sample was wet with $H_2O$ and excess water was allowed to dry off.
5. Benzidine reagent was then applied along with 2% hydrogen peroxide.
6. a ⊕ reaction was obtained from the reacted reagent and the fingerprint powder.
7. This reaction was ~~only~~ along the ridges of the ~~fingerprint~~ print pattern

**11. REMARKS**

a positive reaction was obtained with Benzidine reagent. This indicates the presence of blood ~~on the fingerprint impression~~. deposited by the donor of the fingerprint impression

| 12. IF LABORATORY RESULTS ARE NEGATIVE, THE LISTED EVIDENCE MAY BE DESTROYED ☐ YES ☐ NO | 13. SIGNATURE OF REQUESTER Cpl. John C. Balshy | 14. DATE 11/29/72 |
|---|---|---|

Exhibit C

SP 4-215
(REV. 8-1-66)

## CRIME LABORATORY
## PENNSYLVANIA STATE POLICE
21st and Herr Streets
Harrisburg, Pa. 17103

TELEPHONE (717) 234-4051

LAB REPORT: 70-2250 Suppl.
REPORT DATE: 30 November 1972

INCIDENT NO.: 29-249

CASE: MURDER
VICTIM: John MITCHELL
ACCUSED:
SUSPECT:
PLACE: Harrisburg, Dauphin County
DATE: 13 September 70

FROM: Cpl. John C. Balshy, R & I Division, PSP, Departmental Headquarters
DATE: 29 November 72

ITEMS: 1. One latent lift (palm print)

RESULTS: When the palm print impression was tested with benzidine reagent a positive reaction was obtained.

This indicates the presence of blood deposited by the donor of the palm print.

*Janice A. Roadcap.*
Janice A. Roadcap, Criminalist II

COPIES: R.& I.Div.
Cpl.Balshy
Files

PENNSYLVANIA STATE POLICE
CRIME LABORATORY
HARRISBURG, PA.

ON DATE OF _Nov. 30, 1972_ I THE

UNDERSIGNED RECEIVED ALL EVIDENCE THAT

REMAINED AFTER ANALYSIS IN THE CASE OF

LABORATORY NUMBER _70 - 2250 Suppl._

SIGNATURE _JC Balshy_
TROOP OR POLICE DEPT. _11 - 30 - 72_

NOV 30 1972

# <u>Verification</u>

I verify that the statements made in the forgoing document are true and correct to the best of my knowledge.  I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Date: _____        _____
                                        Steven D. Crawford

B

# IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

STEVEN D. CRAWFORD,              :
                **Plaintiff**    :
                            :     No. 2003-CV-1452
      **v.**                       :
                            :
**COMMONWEALTH OF**        :
**PENNSYLVANIA, COUNTY OF**   :
**DAUPHIN, CITY OF HARRISBURG,**   :
**JANICE ROADCAP, JOHN C.**       :
**BALSHY, and ESTATE OF WALTON**   :
**D. SIMPSON,**                    :     **JURY TRIAL DEMANDED**
             **Defendants** : 

## NOTICE OF REMOVAL

TO:    Prothonotary                    Joshua D. Lock, Esq.
       Dauphin County Courthouse     Jerry J. Russo, Esq.
       Front and Market Streets        Thomas J. Weber, Esq.
       Harrisburg, PA 17101           David M. Steckel, Esq.
                                      Goldberg, Katzman & Shipman P.C.
                                      320 Market Street, PO Box 1268
                                      Harrisburg, PA 17108-1268

                                      The Cochran Law Firm
                                      Johnnie L. Cochran, Jr., Esq.

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §1446(d), a Petition for

Removal and a Notice of Removal were filed in the United States District Court for the

Middle District of Pennsylvania at Civil Action No. _____ on April 24,

2003, removing the action docketed as No. 2003-CV-1452, in the Court of Common

Pleas of Dauphin County, Pennsylvania.  I certify that the attached copy of the Petition

for Removal and Notice of Removal are true and correct copies of the originals that

were filed in the Office of the Clerk of the United States District Court for the Middle

District of Pennsylvania.

> **Respectfully submitted,**
>
> D. MICHAEL FISHER
> Attorney General
>
> By: _____
>
> Maryanne M. Lewis
> Deputy Attorney General
>
> By: _____
>
> Gregory R. Neuhauser
> Senior Deputy Attorney General
> Office of Attorney General
> 15th Floor, Strawberry Square
> Litigation Section
> Harrisburg, PA  17120
> (717) 705-9719
> Counsel for Defendants,
> Commonwealth of
> Pennsylvania, Janice Roadcap and
> John C. Balshy

# IN THE UNITED STATES DISTRICT COURT
## OF THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN D. CRAWFORD,    :
       **Plaintiff** :
            : **No.**
   v.        :
            :
**COMMONWEALTH OF**   :
**PENNSYLVANIA, COUNTY OF** :
**DAUPHIN, CITY OF HARRISBURG,** :
**JANICE ROADCAP, JOHN C.**  :
**BALSHY, and ESTATE OF**   :
**WALTON D. SIMPSON,**    :
      **Defendants :**

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, for the Commonwealth of

Pennsylvania, hereby certify that on April 24, 2003, I served a true and correct copy of

the foregoing Removal Petition and Notice of Removal, by causing it to be deposited

in the United States Mail, first-class postage prepaid to the following:

  Joshua D. Lock, Esq.
  Jerry J. Russo, Esq.
  Thomas J. Weber, Esq.
  David M. Steckel, Esq.
  Goldberg, Katzman & Shipman P.C.
  320 Market Street, PO Box 1268
  Harrisburg, PA  17108-1268

         _____
    for: Maryanne M. Lewis
       Senior Deputy Attorney General

Thu Apr 24 14:31:58 2003

UNITED STATES DISTRICT COURT

SCRANTON                    , PA

Receipt No.    111 138592
Cashier             jill

Check Number:  3726

DU Code    Div No
4647          1

Sub Acct Type Tender        Amount
0:510000  H     2            90.00
1:086900  H     2            60.00

Total Amount:    $    150.00

COM. OF PA/ATTY. GENERAL'S OFFICE PA
B., PA

FILING FEE FOR COMPLAINT IN 1:CV-03-
695