IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN D. CRAWFORD, | : | |
| | : | |
| Plaintiff, | : | No. 1: CV-03-0693 |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF DAUPHIN, | : | |
| CITY OF HARRISBURG, | : | |
| JANICE ROADCAP, JOHN C. | : | (Judge McClure) |
| BALSHY and WALTON | : | |
| DEWEY SIMPSON, JR., | : | |
| ADMINISTRATOR OF THE | : | |
| ESTATE OF WALTER D. | : | |
| SIMPSON, | : | |
| | : | |
| Defendants | : | |

**O R D E R**

January 30, 2006

**BACKGROUND:**

On March 28, 2003, plaintiff filed a complaint in the Court of Common Pleas of Dauphin County at docket number 2003-CV-1452. Shortly thereafter the matter was removed to the Middle District of Pennsylvania. On October 6, 2005, the court granted defendant City of Harrisburg's motion for summary judgment and denied the other defendants' motions for summary judgment. Upon a motion for reconsideration, on January 19, 2006, the court granted defendant County of

1

Dauphin's motion for summary judgment. The case is currently scheduled for the April 2006 trial list. Now before the court is Plaintiff's Motion in Limine to Preclude, or in the Alternative to Limit, the Testimony of John Hathaway Swan. (Rec. Doc. No. 220.) For the following reasons we will grant plaintiff's motion in part and schedule a <u>Daubert</u> hearing.

**DISCUSSION:**

### I. Relevant Facts

John Hathaway Swan was retained by Crawford prior to his first criminal trial in September of 1974. Swan was offered as an expert witness on whether the matter in the palm print was blood and how much foreign matter was present in the print. (Rec. Doc. No. 115, Ex. 1, Vol. II, at 475.) Swan analyzed the blood evidence from the Mitchell crime scene and offered an opinion, conclusions and corresponding documentary support.

Defendants intend to call Swan as a witness in the instant case and have provided an affidavit from Swan. Swan's affidavit includes a description of the work he performed for Crawford and the opinions and conclusions he arrived at after performing his requested analysis. Plaintiff contends the affidavit also includes improper references regarding Swan's assessment of the skill of Herbert L. MacDonell, who is another expert witness for the defense.

Plaintiff also contends that Swan's analysis, opinions, and conclusions that he arrived at after analyzing the blood print evidence at Crawford's request constitute work-product information protected from disclosure under Fed. R. Civ. P. 26(b)(3). In connection with this argument plaintiff assumes that Swan is currently being paid by defendants.

Plaintiff requests that if we do not preclude all of Swan's testimony we should prohibit Swan from offering his opinion about MacDonell's qualifications. Under this request in the alternative, Crawford requests that we limit Swan's testimony to "his factual knowledge of the blood print issues which are germane to the litigation." (Pl.'s Mot. Limine, Rec. Doc. No. 220, at 3.) As an alternative ground for barring portions of Swan's testimony, plaintiff asserts that his affidavit "does not contain definitive opinions regarding the issues which are germane to this litigation; instead, it is littered with mere speculation and conjecture." (Id. at 4.) Specifically, Crawford challenges two sentences in Swan's affidavit. Those sentences read:

> <u>I do not recall</u> seeing anything to discredit or challenge the Commonwealth's position regarding the Commonwealth's position that [the substance on Crawford's print was a mechanism of transfer for a positive print]. Had there been any characteristics of the print that indicated that the reddish brown substance was not a positive print and the substance was not the

3

>  medium of transfer, <u>I expect I would have</u> noted such an inconsistency in my notes and advised Attorney Costopolous (sic.).

(Rec. Doc. No. 220, Ex. A, at 2, ¶ 4) (emphasis added).

Plaintiff asserts that "[t]his type of guesswork falls short of what is required under the Rules with respect to expert opinion testimony." (Pl.'s Br. Supp, Rec. Doc. No. 221, at 4.)

## II.  Plaintiff's Work Product Argument Fails

First, we note that defendants have indicated that plaintiff has incorrectly assumed that Swan is being paid, because defendants are not compensating Swan for his time.  The defendants indicate that they plan to use Swan as a historical witness.  Plaintiff asserts that Swan's analysis, opinions, and conclusions that he arrived at after analyzing the blood print evidence at Crawford's request constitute work-product information protected from disclosure under Fed. R. Civ. P. 26(b)(3).  Defendants assert that there is no rule that would prohibit calling Swan about his knowledge of the matters at issue in the criminal trials.  We do not see how the work product argument is applicable to the facts of this case.

## III.  Swan's Testimony Regarding MacDonell

The references in Swan's affidavit to Professor Harold MacDonell are as

follows:

>I am John Hathaway Swan.  I am a Professor of Criminal Justice at Harrisburg Area Community College.  Part of my training included attending classes taught by Herbert Leon MacDonell, who is the Director of Forensic Science and the Bloodstain Evidence Institute in Corning, New York.
>
>I regard Professor MacDonell as one of the top two (2) bloodstain experts in the USA.  I use his publication sin the classes I teach at HACC.  I consider Professor MacDonell immensely qualified to offer opinions and prepare demonstrations to illustrate blood patterns created by fingerprints/palm prints that have blood on the ridges or blood on the ridges and in the valleys.

The first paragraph is appropriate for Swan to recite as part of his qualifications as an expert in the field.  The second paragraph states Swan's opinion as to the qualifications of MacDonell as an expert in the field.  As such, these latter statements are inadmissible at trial and would only be admissible in the event there is a question raised as to the qualifications of MacDonell as a bloodstain expert.

Otherwise, any opinion testimony of Swan as to MacDonell's credibility must refer only to his character for truthfulness or untruthfulness.  Moreover, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.  Fed.R.Evid. 608.

## IV. Swan's Affidavit and Proposed "Expert" Testimony

Swan's affidavit indicates that he was retained by Crawford for his September 1974 trial to "offer a forensic expert opinion <u>that there was blood</u> [sic.][1] on a print identified as belonging to Steven Crawford that was placed on a Crawford family car at the time of the murder of John Eddie Mitchell." (Rec. Doc. No. 220, Ex. A, at 1, ¶ 4) (emphasis added). Swan examined the original print. He found that "[a]lthough the substance looked similar to blood, my opinion testimony challenged the sensitivity of the tests used by the Commonwealth to determine whether the substance was in fact blood." (Id., Ex. A, at 2, ¶ 1.) Swan's testimony about whether the substance was blood was what Crawford's defense offered him as an expert for in 1974. (Rec. Doc. No. 115, Ex. 1, Vol. II, at 475.)

As defendants' brief indicates, the defense would like to use Swan now as an expert about the nature of the print transfer. On that issue Swan offers the following in his affidavit:

> In examining the print, I saw particles of what could be blood along the ridges of the print. <u>I do not remember seeing any of the pinhead size quantities of blood in the valleys. The existence of particles in the valleys was not relevant to the issue I was examining on

---

[1] Swan's opinion was actually offered to challenge the Commonwealth's tests determining that the substance on the print was blood.

6

>behalf of Crawford.
>
>. . . .
>
>I understand at the time of my evaluation that the Commonwealth's position was that the substance on Crawford's print was a mechanism for transfer for a positive print.  <u>I do not recall seeing anything to discredit or challenge the Commonwealth's opinion regarding this opinion.</u>  Had there been any characteristics of the print that indicated that the reddish brown substance was not a positive print and the substance was not the medium of transfer, <u>I expect I would have noted such an inconsistency in my notes and advised Attorney Costopolous </u>(sic.).
>
>During my forensic evaluation, I interviewed other consultants about Crawford's print.  One theory I considered with Steven Jones of the North Carolina SBI to explain the small amount of bloodlike substance on Crawford's print taken from the auto may have been a second transfer from blood on the sledgehammer.  This theory was consistent with the Commonwealth's positive print theory.

(Rec. Doc. No. 220, Ex. A, at 2) (emphasis added).

Essentially, Swan is willing to testify that as an expert for Crawford's defense on the matter of whether the substance was blood, he cannot recall any evidence that discredits the view that the print was a positive print made by Crawford, and that he only recalls seeing particles of "what could be blood along the ridges of the print."

First, we note that the circumstances of Swan's proposed testimony are

most unusual, and in order to determine the appropriateness of Swan's proposed testimony as an "historical" witness we turn to the transcript of the original September 1974 trial. (See Rec. Doc. No. 115, Ex. 1, Vol. II, at 468-84.) The transcript clearly indicates, as is consistent with his affidavit, that Swan was offered as an expert on whether the substance was blood and to offer testimony as to the quantity of foreign matter in the print. (Id. at 475.)   Swan was not offered as an expert on the manner in which the print was transferred to the car. Even more harmful to the defendants' current desire to offer Swan as an expert on the manner in which the print was transferred to the car, at the September 1974 trial Swan testified that he was not qualified to offer an opinion on how the print was transferred, as the following excerpt indicates:

> Q: In your opinion, Mr. Swan, did you determine whether not that, those pin heads were placed on the print after the print was on the car or whether or not the pin heads were placed on the car with the print?
> MR. MORGAN: Objection.
> THE COURT: Don't answer the question.
>         (Whereupon, the following occurred at Side Bar.)
> THE COURT: There is an objection?
> MR. MORGAN: My objection is based on the point I don't think his expertise goes to that and I don't think the offer was made for this specific opinion.
> THE COURT: I am going to leave that to cross examination. That is the same question I have allowed your witness to answer. The objection is overruled.
>         (Whereupon, Side Bar discussion concluded.)

> The Court: Your question is do you have an opinion on what was just asked.
> A:  Could you repeat the question. (sic.)
> THE COURT: Read the question.
> (Whereupon, last question read back by Reporter.)
> A: <u>I don't feel as though I can make that qualification</u>.
> THE COURT: Stop right there, sir.  <u>Objection is sustained.</u>

(<u>Id.</u> at 481-82) (emphasis added).

On the one hand we recognize that Swan is one of the few individuals with a forensics background who had the opportunity to examine the original print and therefore any recollection he had of the print would be pertinent to the outcome of this case.  However, on the other hand we have serious concerns about Swan's proposed testimony as it appears to go well beyond an "historical" witness's testimony.  First, defendants intend to offer Swan to bolster their theory that Crawford made a positive print with a bloody hand.  In 1974, by his own admission, Swan was not qualified as an expert on the transfer issue and was hired by Crawford to determine whether the substance in the print was in fact blood and to determine the amount of foreign matter in the print.  Second, by his own admission, Swan stated that as an expert witness for Crawford "the existence of particles in the valleys was not relevant to the issue [he] was examining on behalf of Crawford."  (Rec. Doc. No. 220, Ex. A, at 2.)  Nevertheless, Swan's proposed

9

testimony would be based on the absence of notations in his 1974 notes that there was evidence to challenge the existence of a positive print.  We are concerned that if the determination of how the print was transferred to the car was not an area in which he was an expert, nor an area for which he was retained by Crawford to investigate in his 1974 trial, that there are other possible explanations for Swan's absence of indicia in his notes about the manner in which the print was transferred. Swan may indeed have the expertise to make a determination about the nature of a print now, but he admitted that he did not at the 1974 trial. In light of Swan's testimony at the 1974 trial, we believe there is a serious issue as to whether or not Swan's proposed "historical expert" testimony, although relevant ,should be excluded under Rule 403.

     We believe there may be a danger of unfair prejudice where here the defendants intend to call Crawford's expert witness from his first criminal trial to bolster the Commonwealth's theory about the murder of Eddie Mitchell.  Although Swan would be testifying on a matter different than that which Crawford had retained him for, i.e., blood print transfer instead of testing for the presence of blood, blood print transfer is also a matter that he said he was incapable of testifying about at the trial in 1974.  The possibility of unfair prejudice is particularly present because the jury is not only going to recognize that this was an expert hired

by Crawford, but Swan is an individual who actually saw the original print, which is now destroyed. The jury might place greater weight on Swan's testimony than is warranted because he was an individual who saw the original print even though his testimony about blood print transfer would be about a subject which he did not have expertise in 1974 and which was not relevant to the analysis for which Crawford retained him. For all of these reasons the court believes a hearing is required pre-trial to explore more precisely and more thoroughly the proposed testimony of Swan and his qualifications to provide such testimony.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion in Limine to Preclude, or in the Alternative to Limit, the Testimony of John Hathaway Swan is granted to the extent of the relief provided in this order. (Rec. Doc. No. 220.)

2. Swan is precluded from testifying as to MacDonell's qualifications or character without specific prior authorization from the court.

3. A <u>Daubert</u> hearing on the proposed testimony of Swan and his qualifications will be scheduled at the final pre-trial conference on February 2, 2006.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge